# ORIGINAL

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

|  |  |  |
|---|---|---|
| DARLENE HILL, ROY GARRETT, | ) | |
| Individuals, | ) | |
| TRI-COUNTY ENVIRONMENTAL | ) | |
| ASSOCIATION, Inc. a Not for Profit | ) | CASE NO._____ |
| Tennessee Public Benefit Corporation | ) | 1 10 0033 |
| PHILLIP ALLEN, | ) | |
| Individual, | ) | |
| SCOTT DENNIS, DONITA DENNIS | ) | |
| Husband & Wife | ) | |
| DERRICK DENNIS AND ANDREA DENNIS | ) | |
| Husband and Wife | ) | |
|  | ) | |
|  | ) | |
| Plaintiffs, | ) | JURY DEMANDED |
|  | ) | |
| v. | ) | |
|  | ) | |
| WASTE MANAGEMENT Inc. | ) | |
| OF TENNESSEE, a Tennessee Corporation, | ) | |
|  | ) | |
| Defendant. | ) | |
|  | ) | |
| CEDAR RIDGE LANDFILL, INC. | ) | |
| A Tennessee Corporation | ) | |

## COMPLAINT

Come now the Plaintiffs, DARLENE HILL, ROY GARRETT, and TRI-COUNTY ENVIRONMENTAL ASSOCIATION, SCOTT DENNIS, DONITA DENNIS, DERRICK DENNIS, ANDREA DENNIS, AND PHILLIP ALLEN file this complaint against Waste Management Inc. of Tennessee and Cedar Ridge Landfill, Inc. and will state to the Court as follows:

1

# I. STATEMENT OF THE CASE

This is a civil action for remedial and injunctive relief, the imposition of civil penalties, and restitution under the Solid Waste Disposal Act, "SWDA" as amended by the Resource Conservation and Recovery Act, 42 U.S.C. § 6972 (b) and 6945 (hereafter "RCRA" and also referred to as the "Solid Waste Disposal Act") and Clean Water Act, 33 U.S.C. § 1251, and 1365 *et seq*, ("CWA") and civil claims for damages under nuisance, trespass, negligence, negligence per se and unjust enrichment.

The individual Plaintiffs live and own property around the landfill where they maintain livestock. They are members of the non-profit organizational plaintiff located in Marshall County. East Fork Globe Creek (EFGC) and Vickery Creek (VC) have become unavailable for use at times for livestock. Defendant owns and operates a solid waste landfill at 2340 Mooresville Highway in Lewisburg, Tennessee in Marshall County. The landfill is permitted as a "Class I" landfill by the state of Tennessee Department of Environment and Conservation (TDEC) and has been cited numerous times by the state for violations of the water quality standards in the surrounding creeks. Discharges are from both leachate to groundwater that feeds surface waters including EFGC, VC and its tributaries, and from surface run-off discharges. The underlying geology of the site includes voids, caves, underground streams and sinkholes. The ongoing leaks of the landfill and the inability of it to control surface run-off and leachate to the groundwater has now become the subject of a federal suit to obtain remediation, compensate landowners or the damages caused to their property and loss of water use, and close the facility.

2

Plaintiffs add the common law causes of action for nuisance, negligence, trespass and unjust enrichment resulting from the pollution and interference with the recreation, use and enjoyment of their land.

## II. JURISDICTION and VENUE

1.     This Court has subject matter jurisdiction over the federal question claims enumerated in this Complaint pursuant to 33 U.S.C. § 1365(a) (citizen enforcement of the Clean Water Act) and 28 U.S.C. § 1331 (actions arising under the Constitution or laws of the United States) and 42 U.S.C. § 6972 (a)(1)(A) & (B).  Pursuant to 28 U.S.C. 1367 (a) the common law claims and alternate theories related to state law pled here are supplemental and arise from the same case and/or controversy and this court has jurisdiction over all claims presented and parties named irrespective of the lack of diversity.

2.     The relief requested is authorized by statute pursuant to 33 USC § 1365; 33 U.S.C. §§ 1319(c) (1) & (2), & (d), §1365(a) (injunctive relief under the CWA); 1365(a), and 40 C.F.R. § 19.4 (civil penalties for violation of the CWA); 42 U.S.C. §6972 (a) granting authority to the District Court to enforce compliance, restrain contributing acts, or make such order as is necessary; and penalties under §6928 of up to $25,000 per day for violations, and additional criminal penalties as warranted.  Civil damages allowed according to proof.

3.     The location of all violations alleged is Marshall County in this District. Therefore, this District is the proper venue for this action pursuant to 33 U.S.C. § 1365(c) (1).  Venue is further proper in this Court under Section 28 U.S.C. § 1391(b) because the

Defendants maintain their principal places of business in this Judicial District and the property at issue in this action is located in this judicial district

## III. PARTIES

4.      Plaintiffs Darlene Hill and Roy Garrett are brother and sister who own a farm to the west and north side of the landfill. This acreage has supported farming and cattle. It immediately borders the landfill property. A seep of leachate has been openly discharging to an unnamed tributary on their property. It has become known and is referred to in public records by the state and landfill operators as the "Garrett Seep". Portions of East Fork Globe Creek run through their property and provide livestock water.

5.      Plaintiff Tri-County Environmental Association, Inc. is a non-profit corporation and maintains its principal place of business at on Claude Fox Road, Cornersville, Tennessee. The organization maintains an active Board of Directors and the their mission is to address environmental concerns of its members and the community including water pollution and protecting rural and agricultural activities.

6.      Plaintiffs Scott Dennis and Donita Dennis are husband and wife. Scott Dennis is a titled owner, along with his son Derrick Dennis of seventy-two acres less than a half mile from the landfill fronting on Mooresville Highway in Marshall County  Scott Dennis and his wife Donnita maintain a residence on the property with horses. Vickery Creek runs through the property by the home they built there for recreation and time with their family.

7.     Plaintiffs Derrick Dennis and Andrea Dennis are husband and wife. Derrick Dennis is a titled owner of the seventy-two acre parcel on Mooresville Highway and home along with his father, Scott Dennis. Derrick Dennis and his wife Andrea currently reside at the property and have done so from time to time.

8.     Phillip Allen is a resident of Marshall County and owns and resides on a large parcel south and west of the landfill. He maintains cattle on the land and uses water from EFGC which flows by the property in close proximity to the landfill.

9.     Defendant Waste Management, Inc. of Tennessee (hereafter "WM") is a corporation doing business in Tennessee with its principal corporate office in Houston, Texas. Defendant owns and or operates the landfill, commonly referred to as the Cedar Ridge Landfill, ("CRL"). The Registered Agent for service is CT Corporation, at 800 Gay Street, Suite 2021, Knoxville, Tennessee, 37929.

10.     Defendant Cedar Ridge Landfill Inc. (hereafter "CRL Inc.") is a Delaware corporation doing business in Tennessee with its principal corporate office in Houston, Texas. CRL Inc. owns the land on which the landfill is located comprising approximately 179 acres and contracts with Defendant WM. The Registered Agent for service is CT Corporation, at 800 Gay Street, Suite 2021, Knoxville, Tennessee, 37929.


**IV.  60 DAY NOTICE PURSUANT TO SECTION 33 U.S.C. 1365**

11.     Pursuant to 33 U.S.C.1365 (b),  of the Clean Water Act, (CWA) and 42 U.S.C. §6972 (b) of the Solid Waste Disposal Act, (SWDA) Plaintiffs were required, prior to filing a citizen suit to provide written notice  to the polluter and articulate the scope of the violations including the lack of a permit for the discharges and effluent.

Plaintiffs were required also to provide reasonable detail of the same such that the defendants served would have opportunity to correct the violations. On or about February 20, 2009 a federal sixty (60) day notice with a provision for the ninety day (90) period under 42 U.S.C. § (b) (2) (A) referring to actions presenting an imminent and substantial endangerment to health or the environment was sent by certified mail to both defendants by plaintiffs Hill, Garrett and Tri-County Environmental. The letters were delivered with a return receipt and the jurisdictional notice period has expired. On or about February 10, 2010, plaintiffs Dennis and Allen sent a similar letter to the same two defendants, providing jurisdictional notice. After the time expired and the conditions did not abate, this action was filed. The Dennis plaintiffs and Mr. Allen will amend this compliant after the ninety-day period expires to include their RCRA claims. At this time, the CWA federal claims are ripe, and so are the common law pendent jurisdiction claims.

12.     Plaintiffs have complied with the notice requirements to bring the following claims and of the violations are ongoing, continuing and are likely to continue. During the summer of 2009, after the expiration of the 90-day notice, the level of chlorides, ammonia, potassium and calcium concentrations in Vickery Creek increased so significantly that a new Notice of Violation was issued by the State of Tennessee dated June 26, 2009. The notices from Mr. Allen and the Dennis family followed.

## V.   STANDING

13. Each of the plaintiffs has an aesthetic, recreational and health interest that is affected by the discharges of leachate, chemicals and sediment to East Fork Globe, Vickery Spring and Vickery Creek. Each plaintiff has been actively involved in various attempts to address the discharges from the landfill without success. Members of the Tri-

County Environmental Assoc. (hereafter "Tri-County") live in the area and have used East Fork Globe and Vickery Creek recreationally in the past. The individual plaintiffs are members of Tri-County Environmental Association along with other community members. The individual plaintiffs own property and livestock and or live next to the landfill. The Scott family owns land to the south west of the landfill within a mile of it where they maintain horses. Vickery Creek flows through their property after taking discharge from the landfill. The Dennis family had their horses boarded by WM during the summer of 2009 in response to the dangerous levels of leachate chemicals flowing into Vickery Creek and through the Scott property. The recurring leachate discharges have caused health and safety concerns and worries while the Dennis family notices the changing colors of Vickery Creek and notes the absence of aquatic life.

14. Darlene Hill and Roy Garrett own land with cattle to the north west of the landfill where they have been impacted with leachate from the landfill onto their land and into East Fork Globe Creek, a portion of which runs through their property. Plaintiffs Hill and Garret have an active seep of leachate from the landfill on their property which is immediately adjacent to the landfill. It is so well known that the state and the landfill operators and consultants refer to it as the "Garrett Seep". Hill and Garrett have erected fencing to keep the cattle from reaching the area that once was available for watering their livestock. The leachate discolors the water, and alters the chemical and biological components of the water making it at times unsafe and unusable for recreational and livestock use.

15. Phillip Allen also owns land and keeps cattle on a parcel south and west of the landfill. His property includes the confluence of EFGC and Poteet Creek where he

7

has continually observed the muddy surface discharges which flow off the landfill site and are not contained in the landfill sediment ponds. Instead, the mud overflows into EFGC and can be seen merging with Poteet Creek which runs virtually clear during rain events. The sediment discharges have also impacted the livestock and water uses directly affecting Mr. Allen's economic and real estate interests.

16.     The health, safety, aesthetic, recreational, economic and real property interests of these plaintiffs can be redressed by the court in any order that includes but is not limited to effective repair and maintenance of the leachate system, cessation of the leachate and or mud discharges, remediation of the streams and or damages and penalties to motivate the defendants to cease these violations. Plaintiffs have standing to pursue the violations alleged herein pursuant to 33 U.S.C. § 1365, 42 U.S.C. §6972 and relevant case law.

## VI. FACTUAL ALLEGATIONS

17.     Cedar Ridge Landfill is an approximately 176 acre landfill located on land owned by Defendant Cedar Ridge Landfill, Inc. Defendants CRL Inc, and WM own and operate the facility as a Class I landfill. The landfill is permitted by the state Division of Solid Waste Management under permit SNL 59-0238, and under a Multi-Sector General Permit for storm water discharges associated with industrial activities, (also referred to as the "TMSP"), under which Section "L" relates to landfills. The landfill has a history of ongoing and intermittent violations of both permits and various state and federal environmental laws and water quality standards.

18.     East Fork Globe Creek, (EFGC) runs along the north and west sides of the landfill, flowing to the southwest. Vickery Creek flows along the other edge of the landfill, along the east and south side, merging with EFGC off to the south west.

19.     On April 26, 2007, state officials issued a report entitled "Water Quality Impacts from Cedar Ridge Landfill to East Fork Globe Creek in Marshall County." State officials from the TDEC Water Pollution Control Division sampled surface streams and emerging springs in February of 2007 to determine if discharges from Cedar Ridge Landfill were impacting East Fork Globe Creek, (EFGC). Representatives of Waste Management accompanied these officials and observed these conditions. During the sampling event, a discharge from the landfill was observed and characterized as "bright green" due to algae. The discharge was observed downstream from the seep on the Garrett/Hill property, near "sediment pond # 1". Multiple locations were sampled off of the landfill site.

20.     The sampling from February of 2007 recorded Nitrate/Nitrite readings of 5.1 and 5.3 mg/L in one location, and 18 mg/L in another. Additionally, Chloride readings ranging from 46.7 to 2900 and high ammonia, manganese, magnesium, potassium and calcium levels led the state to conclude that contaminants leaving the CRL were present in high enough concentrations to continue causing degradation to EFGC and the state concluded that CRL was the "source of pollution to East Fork Globe Creek". The April 2007 report incorporated the sampling results which were not disputed by the landfill or its consultants.

21.     Based on the results of the sampling event in February of 2007, state officials identified several discharge points where landfill contaminants were entering

EFGC. Waste Management confirmed that the saline nature of the discharge may have existed as far back as 1998 and been responsible for a fish kill in the same creek.

22.     State officials from the Water Pollution Control Division of TDEC confirmed that three particular constituents, Ammonia, Nitrate/Nitrite and Chlorides were being discharged from the landfill in the area and impairing EFGC to the point where aquatic life was substantially affected. EFGC was already on the state "Section 303 (d)" list of impaired and polluted streams when this report came out in April of 2007. The state determined that EFGC would stay on the list, due to discharges from the landfill. on the state "Section 303 (d) list". The Nitrate/Nitrite sample results exceeded TDEC's Regionally Based Interpretations of the state Narrative Nutrient Criterion.

23.     The state has not returned to evaluate or assess the biology of EFGC. It remains polluted as that term is defined and remains on the 303 (d) list.

24.     On May 7, 2007, violations of the groundwater protection standards were documented in a letter to WM from the state. It found that "CRL is releasing solid waste constituents into groundwater and the Waters of the State at levels exceeding the Groundwater Protection Standard for Chloride, Ammonia, Sulfate, Manganese, Sodium, Potassium, Nitrate, and the Maximum Contaminant Level for Nitrate." All monitoring points at that time were showing violations of the standards.   These violations have continued at varying levels.   The solid waste constituents released to groundwater, and surface water since that time have not been stopped.

25.     The site also has a history of surface water quality violations resulting also from failures to comply with the Tennessee Multi-Sector General Permit (TMSP) governing storm-water discharges from the site associated with the industrial activity of

landfilling. In January of 2007, state officials inspected the southern slope of Phase 3 of the site and found severe erosion due to a lack of erosion controls. Sediment from the south slope had migrated over a haul road into a spring channel near an area referred to as "SW-1". The spring channel drained to a sinkhole and both the spring channel and sinkhole were "inundated with sediment" according to a Director's Order and Assessment dated June 25, 2007. That sinkhole had been established by dye trace studies to be directly connected to Vickery Spring (also referred to as "SW-6") which emerges in the streambed of Vickery Creek, immediately south of the landfill. This same area had been the subject of an earlier Director's Order for sediment discharges to the sinkhole in May of 2002.

26.    The Director's Order (DO) of June 25, 2007 detailed numerous water quality and permit violations that had been on-going for years and related to poor management practices. For example, a large 'borrow' area of soil had been created on the site presenting an available source of sediment discharge in a rain event, but was not included in the written storm water and erosion plan submitted by the landfill. Cut-off concentrations for Aluminum and Magnesium had been exceeded for each of the years of 2002, 2003, 2004, 2005 and 2006 according to annual reports provided by the Defendant. Required stormwater sampling had not been performed because there was no discharge during the monitoring period, yet visual inspections indicated sampling could have been performed but was not.

27.    The June 2007 DO required a plan to assure compliance with the TMSP. It was issued on June 25, 2007. A petition to appeal the DO was prepared by Waste

Management and stamped received by the Division of Water Pollution Control on the same day, June 25, 2007.

28.     The surface discharges did not cease. On January 5, 2009, the sediment ponds for the landfill designed and created to comply with the TMSP and capture, contain and settle out the surface stormwater runoff were again photographed by the state overflowing with sediment. The landfill was again caught discharging mud from the landfill site that was carrying leachate and other pollutants in the soils. The ponds had not been maintained to perform the intended function and prevent the off site flows. The mud was discharging down EFGC and over the property owned by Mr. Allen where it was observed by him.

29.     On May 12, 2009, the Division of Water Pollution Control issued another Notice of Violation, (NOV) and an amended DO for sediment discharges to EFGC and Vickery Creek in violation of the TMSP. Discharges of sediment from the landfilling activities, from lack of erosion controls and from the sediment ponds have been continuous and ongoing for several years turning EFGC dark brown and muddy during and after rain events carrying mud and pollutants into waters of the state and United States. Specifically, such discharges were observed by local landowners during each significant rain, and recently in April, May, June and July of 2009 after expiration of the 60/90 day notice to the landfill on federal law violations.

30.     Site inspections by state officials conducted on May 1, 2009 confirmed that discharges had occurred from all three sediment basins on the landfill site, sediment deposits were 1 to 2 inches deep in the creek, had come from the landfill site and resulted in a condition of pollution to waters of the state. Additionally, the design of the sediment

basin 1 and condition of the standpipe would not allow enough settling time such that sediment laden waters would be discharged before the particles could drop out in the pond.

31.     The landfill has been discharging constituents off-site through underground springs that surface on-site and then off-site for several years.  There have been increases of certain constituents over background levels for the eco-region since at least 2005.

32.     On July 15, 2005 the state sent written notice to Waste Management that based on the ground water monitoring reports submitted by CRL, "Assessment Monitoring" was now required.  Specifically, monitoring at "SW-3" and "SW-6" (also known as Vickery Spring which is off the site in a residential neighborhood) had high levels of ammonia, chloride, calcium, nitrate, potassium, sodium, manganese and magnesium as compared to background levels, (levels at stream segments not affected by discharge from the site).  The site was required to locate and install a monitoring point to yield ground water samples from the uppermost aquifer consistent with background water quality not affected by leakage from the facility.

33.     Despite being in "assessment" since 2005 for violation of state Water Quality Control Act, and the State Solid Waste Act and Rules, the problems continue. There is no underground groundwater monitoring of the site within the boundaries of the permitted landfill.  Defendants can only test for groundwater when it emerges at surface waters and is moving off-site, which provides no early warning or detection.  This is a significant variance of state groundwater monitoring rules.

34.    In the summer of 2009, additional discharges were identified flowing out of the landfill from a broken leachate pipe through a natural underground conduit directly to Vickery Spring, (SW-6) which surfaces in a residential neighborhood.  The constituent levels were so high that horses at a downstream property, specifically the Dennis family, were immediately removed and boarded at the expense and recommendation of Waste Management representatives. Discharges to groundwater surfacing on and off the landfill site that exceed background levels for ammonia, chloride, calcium, nitrate, potassium, sodium, manganese and or magnesium are continuing.  East Fork Globe continues to be degraded and polluted.  Vickery Creek and Vickery Spring continue to be degraded and polluted.

35.    The landfill is located on an area of "karst" terrane characterized by sinkholes, caves, sinking and reappearing streams and underground streams and discreet water conveyances. A cave system known as the "Perimeter Void" was discovered just south of Phase 4 on March 6, 2003 containing descending chambers, underground streams and rooms large enough for a man to stand in.  The cave extends under Phase 4, into the landfill area. The full extent of the cave was not investigated or mapped.

36.    Cave-ins have occurred at the landfill evidencing the geological instability of the site.  During the excavation in preparation for landfilling activities at Phases 3, 4 and 5 CRL became fully aware of karst features underneath the surface when some surface areas collapsed requiring re-engineering of some aspects of each Phase.  The full extent of the underground areas that are subject to additional failure and collapse and which provide a conduit for leachate to reach groundwater that later surfaces as springs and creeks in the immediate area remain unknown.

37.    In November of 2008, the Plaintiffs herein conducted independent sampling at the Garrett Seep and at Vickery Creek below the impact location to determine if the discharges were continuing.  The results showed excessively high chlorides, conductivity, calcium, potassium and magnesium among other parameters that were evident in the steam at the known discharge locations.  Both of these sampling sites were off the landfill footprint, and well outside the landfilling area on private property.

38.    Plaintiffs are informed and believe that the leachate collection and transport pipes become clogged, distressed and are not properly maintained.  At least one section of pipe is known to have broken and sent leachate directly to Vickery Creek as a result of the natural underground conduits resulting in a discharge that continued for several months, turning Vickery Creek to various unnatural colors.  The pipes deliver leachate through the engineered collection system and into the leachate collection tanks for pumping and removal from the site in a manner covered by the solid waste permit, SNL 59-0238 issued by the Division of Solid Waste.  The potential for further and ongoing violations is significant.

39.    Waste Management has known for at least four years that the site is discharging leachate to ground water and surface waters beyond the landfill footprint. Waste Management has also known that these discharges are due to factors other than the conditions at Cells 1 and 2, known as the "old landfill" that is not underlain in the same manner as the later cells.  Waste Management failed to abate these discharges.  Waste Management has delayed by years the necessary remediation including creation of a comprehensive clean up plan, timely maintenance of the surface ponds and the underground leachate system, capping the existing cells, and installing double walled

leachate lines among other things. In nearly each instance, the discharges and violations were avoidable by basic care and timely maintenance of the systems that the Solid Waste Permit, and the surface run-off TMSP required.

40.    The springs and stream where discharges have been detected and where discharges are occurring are "point sources" as that term is defined under the Clean Water Act.

41.    The leachate discharges constitute a solid or hazardous waste under the federal Solid Waste Disposal Act, and the state Solid Waste Act.

42.    Waste Management is prohibited under federal law, state law and its own permit terms, permit number 59-102-0238 from discharging solid waste, leachate or hazardous waste into the ground water or surface waters, and the waters of the state of Tennessee and the waters of the United States, also known as "jurisdictional waters".

43.    Plaintiffs contend that East Fork Globe, and Vickery Creek are both waters of the state and waters of the United States, as defined under the Clean Water Act with a significant and continuous hydrological connection of surface waters to the larger streams in the Duck River watershed, and 'navigable' or jurisdictional waters of the United States. The Clean Water Act applies.

44.    Plaintiffs allege that the discharges from the landfill violate federal law, caused damage to private property, constitute a nuisance and a trespass to private property and have been ongoing and continuing to the financial benefit and with the conscious disregard of Waste Management Inc., of Tennessee.

45.    Any violation of a state or federal order pursuant to RCRA or a hazardous waste regulating program constitutes an actionable violation under Citizen Suit

provisions 42 U.S.C. Section 6972 et seq. Waste Management violated the state Director's Order of June 25, 2007 by failing to implement and maintain Best Management Practices to assure compliance with the TSMP and prevent conditions of pollution resulting from erosion control failures as set out on pages 9 and 10 of the DO. Sediment discharges continued with structural failures through 2009. Additionally, Waste Management violated the order repeatedly by allowing surface sediment discharges in April, May, and June of 2009 and at all times when there was a rain event in excess of .50 inches of rain in a 24 hour period since June of 2007.

46.     The discharges to East Fork Globe, and Vickery Creek constitute a substantial and imminent risk of harm to the environment and human health. East Fork Globe has been impaired and polluted, with altered chemical and biological conditions rendering it substantially less useful for the purposes of recreational use and livestock watering. The state water quality department has not studied the biological impacts of EFGC since issuing the Report dated April 26, 2007. Vickery Creek is impaired and also polluted from the leachate discharges diminishing the aquatic life. The discharges at times turn the creek to a gray, green and strange bluish color. The state has not undertaken a study of Vickery Creek or required corrective action. Private action through the federal court has become necessary.

47.     Plaintiff further alleges that Waste Management is capable of the necessary management and remediation to cease the violations, restore the streams to health and cap the site. They have taken some actions and not others, but continue to use EFGC, VC and Vickery Spring as dilution for the landfill discharges.

48.     The Notices required under the CWA and SWDA/RCRA were prepared and delivered by certified mail, return receipt requested.    Service of the letters were achieved on both defendants. The offending conditions remain.   The Dennis Family Plaintiffs and Phillip Allen will amend to include their RCRA claims when the last portion of the 90 day notice expires in mid May, 2010.   The 60 day notice for all Clean Water Act claims has expired and those claims may be brought for all plaintiffs.


## VII.  COUNT I:
### CITIZEN SUIT FOR VIOLATIONS OF THE CLEAN WATER ACT,

49.     Plaintiffs reallege all of the foregoing paragraphs and incorporate those as if fully set forth in this cause of action.

50.     Pursuant to 33 USC Section 1251 (a), the objective of the Clean Water Act "is to restore and maintain the chemical, physical and biological integrity of the Nation's waters." Violators of the Clean Water Act  (CWA) restrictions are strictly liable pursuant to 33 USC Section 1311 (a).

51.     Pursuant to 33 USC section 1365 (a), any citizen may commence a civil action against any person who is alleged to be in violation of an effluent standard or limitation as defined by the CWA or any order issued by a state with respect to such standard or limitation.  No such action may commence until after the expiration of sixty days of providing written notice of the alleged violations such that the permittee may attempt to correct the violations.

52.     Plaintiffs allege that adequate and sufficiently detailed notice was provided according to statute and the violations have continued and are likely to continue.

53.     An "effluent limitation" is defined under the CWA, (at 33 USC Section 1362 (11)) as "any restriction established by a State or the Administrator on quantities, rates and concentrations of chemical, physical, biological and other constituents which are discharged from point sources…".

54.     Defendants and each of them have violated the Clean Water Act by continuously discharging the aforementioned solid and hazardous waste and leachate into waters of the United States without a permit.  The Solid Waste Permit issued by the state, SNL 59-0238,  does not allow such discharges to waters of the state, or the United States.

55.     The sediment discharges detailed in the above set of facts are unpermitted surface discharges to EFGC, Vickery Creek/Spring and its tributaries in violation of the TMSP under section "L" relating to landfills and in violation of the Director's Orders from state regulators.

56.     These discharges also constitute a violation of state Water Quality laws, including but not limited to T.C.A. Section 69-3-108 (requiring a permit for the discharge of anything into state waters) 68-211-104, including subparts (3), and (4) and solid waste regulations, including but not limited to Rule 1200-1-7-.04 (facility must be designed and maintained to minimize potential for release of solid waste or harmful materials except in accordance with state water pollution and solid waste control rules and laws; utilizing erosion control to prevent surface run-off; sites in karst terrane;  and maintaining leachate collection systems to avoid leaking), Rule 1200-1-7-.02(4) (a) (3), Rule 1200-1-7-.02 et. seq. The discharges also violate the Directors Order of June 2007, and the TMSP under section "L" prohibiting discharge of sediment causing objectionable color contract and

other pollutants off the landfill area to surrounding streams. Plaintiffs allege the discharges have been intermittent for the last five years or longer, and are continuing.

57.     The discharges of leachate from seeps, and the discharges of sediment from the ponds and outfalls for stormwater constitute point sources within the meaning of the Clean Water Act.

## VIII.  COUNT 2:
## CITIZEN SUIT UNDER SOLID WASTE DISPOSAL ACT, (RCRA)

58.     Plaintiffs Darlene Hill, Roy Garrett, Tri-County Environmental Association, Inc reallege all of the foregoing paragraphs and incorporate those as if fully set forth in this cause of action.

59.     Pursuant to the Solid Waste Disposal Act, 42 U.S.C. §6972 (a)(1)(B) a citizen may bring suit against any person who is a past or present generator, transporter, owner or operator of a treatment, storage or disposal facility who has contributed or is contributing to the past or present handling, storage, treatment, transportation or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment.

60.     Defendants CRL Inc. and WM Inc. are past and present generators, transporters, owner/operators of solid or hazardous waste within the meaning of  42 U.S.C. § 6903 (5) and (27).  The Defendants have discharged solid waste and or hazardous waste at its site which has traveled and migrated through groundwater and soil onto the property of others and into East Fork Globe and Vickery Creek.

61.     The constituents discharging from the site as alleged in this complaint are 'solid waste' as that term is defined by federal and state law, and have created a substantial and imminent risk of harm to the environment and exposure to livestock and

to humans who live and recreate along the creek and river banks. Plaintiffs Hill and Garrett and the members of Tri-County Environmental cannot safely recreate in these streams or safely water their livestock because the contaminants are unrestrained and intermittently flow out of the ground.

62. As a direct and proximate result of Defendants' acts and/or omissions contributing to the past and/or present handling, storage, treatment, transportation, and/or disposal of solid and/or hazardous waste which may present an imminent and substantial endangerment to health or the environment, Defendants are liable for such endangerment under RCRA, pursuant to 42 U.S.C. § 6972 (a)(1)(B) and subject to orders of abatement and monitoring.

63. Plaintiffs Hill, Garrett and Tri-County Environmental Inc. have complied with the notice requirements set forth in 42 U.S.C. §6972(b)(2)(A). The Dennis family plaintiffs and Phillip Allen will amend on motion in May after the time limit has expired for them to join in this cause of action.

64. Plaintiff has complied with all conditions precedent to bringing its RCRA claims against these Defendants under 42 U.S.C. §6972 and no action has been taken that would prevent the filing of this claim under §6972 (b)(2)(B) or (C).

65. Plaintiffs Hill, Garrett and Tri-County Environmental are entitled to and request injunctive relief against Defendants, ordering them to undertake and/or pay for any and all investigations, studies, monitoring, response, removal and remedial actions which may be necessary and/or required to abate, remediate, remove and otherwise address the environmental contamination at and near the site, the streams, the Garrett property and surrounding areas where there may be an imminent and substantial

21

endangerment to health or the environment, and otherwise ordering Defendants to take all action as the Court may deem necessary pursuant to the remedial powers in 42 U.S.C. 6972(a) (1) (B) including imposing civil penalties.

66.     Plaintiffs are entitled to payment by this Defendant of fees and costs arising from the prosecution of the RCRA claims including but not limited to attorney, expert, and court fees/costs pursuant to 42 U.S.C. §6972(e).

## IX.  COUNT THREE;  OPEN DUMP UNDER RCRA

67.     Plaintiffs Hill, Garrett and Tri-County Environmental reallege all of the foregoing paragraphs and incorporate those as if fully set forth in this cause of action.

68.     Pursuant to the Solid Waste Disposal Act, 42 U.S.C. §6972 (a)(1)(A) a citizen may bring suit against any person who is alleged to be in violation of any permit, standard, regulation or other requirement pursuant to the chapter after proper notice. Plaintiffs Hill Garrett and Tri-County Environmental allege that Defendants and each of them are in violation of 42 U.S.C. §6945 which prohibits open dumping, for dumping solid waste in a manner that resulted in materials, and leachate unconstrained and discharging from the area without a permit.  These plaintiffs contend the discharges of leachate off site, and the discharges into waters of the United States in violation of the Clean Water Act constitute an 'open dump' within the meaning of  42 U.S.C. § 6903(14) and 40 C.F.R. Parts 257 and 258.

69.     These plaintiffs allege that as a direct and proximate result of the Defendants' ongoing discharges to the surrounding streams and spring, the Plaintiffs are entitled to an order restraining any further discharges off the site and from additional

activities that will contribute to such discharges and such other action as may be necessary to clean up, stabilize and monitor the site.

## X. COUNT FOUR; TRESPASS

70.     The individual plaintiffs reallege of the foregoing paragraphs and incorporate those as if fully set forth in this cause of action.

71.     Defendants released solid and or hazardous waste on to the Hill, Garrett, Allen and Dennis Family properties in the form of leachate from a solid waste landfill. Additionally, the defendants repeatedly discharged sediment from the landfill into Vickery Creek and EFGC causing another trespass on the Allen property that occurred repeatedly during significant rain events during the years of, 2006 and 2007, 2009 and to the present.

72.     These plaintiffs enjoyed the exclusive possession of their land. Defendants did not have permission, express or implied to trespass by an instrumentality such as the discharge of leachate, pollutants or sediment onto or across the land of the Plaintiffs.

73.     As a direct and proximate result of the trespass, plaintiffs have sustained damages including a diminution in value and or damages as allowed by law according to proof.

## XI. COUNT FIVE; NEGLIGENCE

74.     All individual plaintiffs reallege the foregoing paragraphs and incorporate those as if fully set forth in this cause of action.

75.     Defendants have a duty to the neighboring landowners to avoid the improper release of solid or hazardous waste discharged onto the site and filled into the

hillside. Defendants were on notice since at least 2007 that leachate was discharging off the site through underground conduits into the streams and onto the land owned by Garrett and Hill. Those discharges have continued. The same is alleged regarding the surface sediment discharges mixing with stormwater run-off, prohibited under the TMSP, Section "L" for Industrial use. Defendants did not offer to fence out the polluted stream, or to pump and treat the polluted seep, or seal it off from the Garrett/Hill property. Defendants did not timely advise that the pollutants may harm or cause illness to the cattle raised on the land drinking the water at the seep. Defendants had a duty to take reasonable steps to contain and restrain any further discharges onto the Garrett/Hill property and a duty to maintain their site and the leachate lines so as to prevent the breakage and discharge of leachate directly to the property of the Dennis family which required the removal of their horses. Defendants further have a duty to comply with state and federal laws, statutes and regulations regarding water quality and solid waste as set forth above, all of which are intended to prevent and abate water pollution and the destruction of property from landfilling activities or water pollution.

76.    The individual plaintiffs allege that Defendants breached their duty to these landowners by allowing the site to continue discharging the sediment/mud, solid waste, leachate and or hazardous waste onto the plaintiffs' properties and failing to take reasonable steps to cease all discharges. Instead, Defendants continued to violate state and federal laws, and to benefit their business by saving the cost of comprehensive remediation.

77.    As a direct and proximate result of these alleged acts and omissions, pollutants have discharged on to the Plaintiffs' lands causing damage and environmental

pollution. The damage constitutes an ongoing intrusion upon the right to exclusive possession of Plaintiffs' lands. The damage also requires remediation and has caused temporary and permanent damage, and diminution in value.

## XII. COUNT SIX; NUISANCE

78.     Individual plaintiffs reallege all of the foregoing paragraphs and incorporate those as if fully set forth in this cause of action.

79.     These plaintiffs allege that by the acts set forth herein, Defendant has created and maintained a nuisance that substantially and unreasonably interferes with the use and enjoyment of the Garrett/Hill property. The pollution is visible, interferes with the practical uses of the property including recreation and safe livestock watering.

80.     Plaintiffs allege the nuisance may be temporary or permanent, or both and demand damages accordingly along with special damages allowed under state law including but not limited to personal discomfort, inconvenience, loss of income, costs of repair, and distress.

## XIV. COUNT SEVEN; UNJUST ENRICHMENT

81.     The individual plaintiffs reallege all of the foregoing paragraphs and incorporate those as if fully set forth in this cause of action.

82.     Plaintiffs have conferred upon the defendants the benefit of using the Plaintiffs' property as a disposal path for leachate sediment and mud from the defendants' landfill site. Defendants saved the costs of timely maintenance, repair and removal of clogged leachate lines, repair and maintenance of the sediment ponds, pumping and removal of leachate from the cells, trucking off and treating the leachate for proper disposal. Defendants saved these costs annually.

83.    Plaintiffs allege the defendants appreciated the benefit being conferred and that upon full discovery of the total cost saved by defendant by avoiding proper disposal of solid waste and proper erosion control, that same sum constitutes the damages due to Plaintiffs.    Under the circumstances alleged herein, it is unfair and unjust for the Defendants to retain the financial benefit of avoiding those required costs and saving that money by illegally using portions of the Plaintiffs' land as their corporate dumping ground.    Accordingly, Defendants must disgorge or pay back the benefit received.

## **PRAYER FOR RELIEF**

WHEREFORE,  Plaintiffs respectfully request that this Court;

A.        Grant a temporary restraining order and or a preliminary injunction based upon motion and hearing to enjoin any further violations and require compliance with the TMSP permit for storm water discharges, and the Solid Waste Permit which prohibits leachate discharges off site, and to enjoin all violations of the Solid Waste Disposal Act, the Clean Water Act and or state law consistent with the solid or hazardous waste program in Tennessee pending the determination on the merits of the other causes of action, penalties, cost and attorney fees as allowed under statute;

B.        Require investigation, monitoring and remediation of the site under the RCRA citizen suit provisions;

C.        Make a finding that the defendants have violated the RCRA, the Clean Water Act, the Tennessee state water quality laws, and the

effluent limits set by the TMSP permit for Storm Water Discharges and have violated the standards and limits repeatedly;

D.        Enjoin any further discharges from the landfill that exceed background levels established for streams nearby that are not impacted by the landfill and order such cleanup and monitoring as will abate the flow of constituents and sediment into the steams from the site;

E.        Enter an order awarding plaintiffs recovery of all costs of this action, including reasonable attorney's fees, expert fees and allowable penalties under the RCRA and the Clean Water Act and other applicable laws including the Equal Access to Justice Act;

F.        Award damages to the individual plaintiffs in an amount to compensate for their respective property damages, as temporary or permanent nuisance, and as allowed by law as well as such further and additional relief as the Court deems just and appropriate to abate the ongoing conditions of pollution, compensate the plaintiffs and reach an equitable result.

Respectfully Submitted,

/s/ Elizabeth L. Murphy

Elizabeth L. Murphy    No. 20905
1102 17th Avenue South, Suite 401
Nashville, Tennessee 37212
615-327-0404 , fax 320-1344
cell 289-7615
Email: elizmurphy966@msn.com
*Counsel for Plaintiffs*

27