UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | |
|---|---|
| DARLENE HILL, ROY GARRETT, Individuals, TRI-COUNTY ENVIRONMENTAL ASSOCIATION, Inc. et al <br><br> Plaintiffs, <br><br> v. <br><br> WASTE MANAGEMENT, Inc. OF TENNESSEE, a Tennessee Corporation <br> Defendant. <br><br> CEDAR RIDGE LANDFILL, INC. A Tennessee Corporation. | No. 1:10-cv-0033 <br> JUDGE HAYNES |

## MEMORANDUM

Plaintiffs, Tennessee citizens and members of Tri-County Environmental Association, a non-profit corporation, filed this action under the Resource Conservation and Recovery Act, ("RCRA") 42 U.S.C. § § 6945 and 6972(b) and the Clean Water Act ("CWA"), 33 U.S.C. § § 125 and 1365 et seq. against the Defendants: Waste Management of Tennessee, Inc. ("WMT") that operates a landfill in Marshall County, Tennessee on land owned by Cedar Ridge Landfill Inc. Plaintiffs' claims arise from leakages and runoffs of contaminants and waste from WMT's landfill causing contamination of the East Falk Globe Creek, the Vickory Creek and Poteet Creek in Marshall County. Plaintiffs assert that such contamination adversely impacts their properties and interests. Plaintiffs cite notices from the Tennessee Department of Environment

and Conservation ("TDEC") of WMT's violations of environmental laws since 2005 that continue. Plaintiffs seek injunctive relief and damages caused by Defendants' violations of the RCRA and CWA.

Before the Court are the Plaintiffs' and the State of Tennessee's motions for review of and objections (Docket Entry Nos. 35 and 36) to the Magistrate Judge's Order (Docket Entry No. 33) compelling, but limiting discovery at the deposition of James Clark, a senior geologist and TDEC employee. On August 3, 2011, responses to these motions were filed and on August 8, 2011, Plaintiffs filed a reply to the State's response. (Docket Entry No. 41). The Court agreed to give expedited review of these motions given Clark's departure for military duty on August 14, 2011.

Plaintiff deposed Clark and during his deposition, the State asserted the "deliberative process privilege" to bar any questions about statements of the TDEC Commissioner, Deputy Commissioner and General Counsel as well as members of the State Attorney General's office who participated in "internal settlement discussions" that resulted in TDEC's Memorandum of Understanding ("MOU") with WMT. That memorandum mooted WMT's appeal of an administrative order denying WMT's application for a permit to expand its landfill operation in Marshall County. In its motion, the State contends that the Magistrate Judge erroneously failed to recognize that the Solid Waste Board's proceeding is an adjudicative proceeding to which the TDEC Commissioner is a party. Thus, TDEC's officials' discussions were settlement negotiations and Fed. R. Civ. P. 408 bars discovery of the settlement discussions on the TDEC-WMT MOU.

Plaintiffs' objections are that the Magistrate Judge restricted discovery by applying the attorney-client privilege to bar discovery of Clark's knowledge of the discussion about the

2

WMT's MOU with TDEC because neither Plaintiffs nor the State cited or briefed the attorney-client privilege on Plaintiffs' motion to compel Clark's testimony. Plaintiffs assert that neither Tennessee case law nor Tennessee's Open Records Act recognizes the deliberative process privilege asserted by the TDEC's counsel at Clark's deposition.

### A. Analysis of the Motion

To provide some context to this dispute, according to the complaint, beginning in 2005, TDEC officials found high levels of ammonia, chloride, calcium, nitrate, potassium, sodium and magnesium near Vickery Creek and a nearby residential area and the Center Ridge Landfill. (Docket Entry No. 1, Complaint at ¶ 32). The State cited WMT with violations of the Water Quality Control Act and Solid Waste Act. Id. ¶ 33. From 2007 through 2009, TDEC found additional violations at WMT's landfill. Id. at ¶¶ 26-30. WMT allegedly violated the Solid Waste Division Director's 2007 order to employ remedial measures to prevent pollution and land erosions near the WMT landfill. Id. at ¶ 45.

In April 2010, the State's Division of Solid Waste denied WMT's permit to expand its landfill operations in Marshall County. WMT appealed that decision in May 2010 to the State's Solid Waste Board that issues its findings and orders. Tenn. Code Ann. § 68-211-113(f). With the appeal, TDEC Commissioner lacks any decision-making authority on the issues, but is a party to the administrative appeal. Tenn. Code Ann. § 68-211-113(e). Pending the appeal, TDEC officials met with WMT representatives and those discussions led to a June 8, 20011 Memorandum of Understanding ("MOU") that settled WMT's administrative appeal. Under this MOU, WMT agreed to monitor the groundwater at a location other than in the backyards of nearby residents.

Clark, a TDEC geologist, worked for the last ten (10) years on the contamination issues at Cedar Ridge landfill that he has visited over 50 times. Clark monitors groundwater reports and effectiveness monitoring reports on the landfill. Clark is TDEC's most knowledgeable person on the geology underlying the landfill site. Clark reports to Dennis Lampley, whose supervisor is Glen Pugh, who then reports to Mike Apple, division director for Solid Waste.

At his deposition, Clark explained that prior to Solid Waste's April 2010 denial of WMT's application to expand the landfill representatives from the TDEC's office of general counsel rarely attended meetings on the WMT expansion application. After the April 2010 denial of WMT's expansion permit, Joseph Sanders, David Henry, Ashley Ball and Lisa McCarter of the TDEC general counsel's office attended all such meetings and TDEC's General Counsel attended the meeting that discussed Phase 7 of the MOU. (Docket Entry No. 31, Exhibit 2 at 101). Carter testified that he felt pressured to agree to terms that were included in the MOU. Id. at 209-210.

In the discovery process, the State agreed to produce documents with raw technical data that WMT provided during the TDEC-WMT settlement negotiations. At Clark's deposition, the State's counsel invoked the deliberative process privilege to questions that would elicit from Clark any opinions or recommendations of TDEC staff based upon that data, during TDEC's internal settlement meetings between January 1, 2010 and June 8, 2011. (Docket Entry No. 32). At Clark's deposition, the State attorney general's representative expressly denied any reliance on the attorney client privilege for her objection in the following colloquy among counsel:

> Ms. Murphy (plaintiffs' counsel): **So is it the State's position that anything that was said by the geologists or the technical reviewers in any of their meetings regarding Cell 7, post denial, post appeal by Waste Management, is going to be covered under the attorney/client privilege if counsel was present?**

4

Ms. McCarter (deputy Attorney General): **No, it's covered under deliberative process privilege.**

\* \* \*

Ms. McCarter: In these formal meetings that you're referring to, yes, because my understanding is the formal meetings were called for the purpose of trying to deliberate on this entire issue.

Ms. Murphy: **So the deliberative process privilege is asserted by the State as to what occurred in the formal meetings?**

**Ms. McCarter: Yes.**

(Docket Entry No. 41, Exhibit 1, at pp. 98-99). Later, McCarter stated: "Objection. In the context of any discussions or statements that may have been made to Mr. Clark since the settlement negotiations began, I would again invoke the deliberative process privilege and instruct him not to answer if it comes within that time frame" (Docket Entry No. 31, Exhibit 2 at pp. 209-10). The State's counsel reiterated that "yes" that State's counsel was relying on the deliberative process privilege for any questions about these meetings. (Docket Entry No. 41, Exhibit 1 at p. 99, lines 15-23). Moreover, the State's counsel stated that the meetings were "trying to deliberate on this entire issue." Id.

### B. Conclusions of Law

At the outset, the Court notes that at the Clark deposition, the State's counsel did not mention nor rely on Fed. R. Evid. 408 on settlement negotiations for the State's objections to Plaintiffs' counsel's questions to Clark. Rather, the State's counsel clearly and repeatedly relied on the deliberative process privilege. Counsel for a party may instruct a witness not to answer a question at a deposition, where the objection is based upon a privilege. Boyd v. University of Maryland Med. Sys., 173 F.R.D. 143, 147 (D. Md. 1997). As here, Plaintiffs' counsel properly

questioned as to the specific privilege asserted. See Moore's Federal Prac. §30.43[2] at 30-91. Yet, a party cannot assert one privilege at the deposition and then assert different privileges or other grounds in a motion to compel the testimony at issue. Moloney v. United States, 204 F.R.D. 16, 20-21 (D. Mass. 2001)[1]. Thus, the Court will consider only the privilege asserted by the State at Clark's deposition.

Here, TDEC disclosed its "Memorandum of Understanding" with WMT, but insists that all discussions of TDEDC personnel leading up to and creating the document are within the "deliberative process" privilege. The Magistrate Judge ruled that discovery of the contents of TDEC's "internal" meetings leading to MOU is barred by the attorney-client privilege, but that privilege was not asserted at the deposition nor briefed by the parties on the motion to compel. To that extent, that Order is set aside.

In Swift v. Campbell, 159 S.W.3d 565 (Tenn. Ct. App. 2004)[2], cited by the parties, the Tennessee Court of Appeals addressed an assistant district attorney's assertion of the work-product and attorney-client privileges as well as the deliberative process privilege to bar a federal habeas petitioner's request, under the Tennessee Public Records Act, for the assistant's files during his state prosecution. In Swift, the Tennessee Court of Appeals assumed that state court decision could serve as a "state law" to except documents from the Public Record Act, id. at 571, and then the Court stated as to the deliberative process privilege:

---

[1] Fed. R. Evid. 403 and 408 bar evidence of settlement discussions at trial, but courts have held that those rules do not necessarily bar discovery on settlement discussions, Levick v. Maimonides Medical Center, 2011 WL 1673782 at **2-3 (E.D. N.Y. May 3, 2011) provided there is a showing of relevance.

[2] On this issue, the Court considers Swift as the most applicable state precedent. See, Miles v. Kohli & Kaliher Assoc., Ltd., 917 F.2d 235, 241 (6th Cir. 1991) ("Where the state supreme court has not spoken, our task is to discern from all available sources, how that court would respond if confronted with the issue.").

Finally, the State argues that the records maintained by the Office of the District Attorney General for the Thirtieth Judicial District should be shielded from public inspection by the "deliberative process privilege." **We have no doubt that there exists a valid need to protect the communications between high government officials and those who advise and assist them in the performance of their official duties. United States v. Nixon, 418 U.S. 683, 705, 94 S.Ct. 3090, 3106, 41 L.Ed.2d 1039 (1974). However, an assistant district attorney general preparing to defend a conviction in state court is not the sort of official to whom this privilege applies.**

Protecting the confidentiality of conversations and deliberations among high government officials ensures frank and open discussion and, therefore, more efficient government operations. United States v. Weber Aircraft Corp., 465 U.S. 792, 802, 104 S.Ct. 1488, 1494, 79 L.Ed.2d 814 (1984). However, **the deliberative process privilege must be applied cautiously because it could become the exception that swallows up the rule favoring governmental openness and accountability. If governmental employees at any level could claim the privilege, Tennessee's public records statutes and open meetings law would become little more than empty shells.**

**Whether the "deliberative process privilege" may be invoked depends on the governmental official or officials involved. We have no doubt, for example, that the Governor may properly invoke this privilege, should he or she care to, in meetings with staff or cabinet members. We have also held that the Constitution of Tennessee embodies a version of the privilege for the General Assembly when it decides to invoke it.** Mayhew v. Wilder, 46 S.W.3d 760, 772 Tenn.Ct.App.2001) (holding that the public does not have a right of access to all legislative meetings because of Tenn. Const. art. II, §§ 21 and 22). However, **we decline to hold that the privilege applies to an assistant district attorney general preparing for a hearing in state court involving a writ of error coram nobis proceeding under Tenn.Code Ann. § 40–26–105. Tenn. R.Crim. P. 16 adequately protects his or her work product.**

Id. at 578-79 (emphasis added with footnote omitted).

In Tennessee's Open Meetings Act, the Legislature declared as public policy that "the formation of public policy and decisions is public business and **shall not be conducted in secret.**" (Tenn. Code Ann. § 8-44-101 (a) (emphasis added). The "Open Meetings Act" prohibits governing bodies from holding secret meetings. The Public Records Act creates a presumption of 'openness' that the non-disclosing party must overcome. Tennessean v. City of Lebanon, 2004 WL 290705 (Tenn.Ct.App.2004). The General Assembly has directed the courts

7

to construe the public records statutes broadly "so as to give the fullest possible public access to public records." Tenn.Code Ann. § 10–7–505(d). The Tennessee appellate court dicta in <u>Swift</u> clearly suggests the recognition of such a privilege for high ranking state officials, but not for an assistant who would advise such an official. Moreover, <u>Swift</u> suggests a very narrow application of this privilege given Tennessee's Open Meetings and Public Records laws.

In any event, in its dicta, <u>Swift</u> relied upon federal law for this privilege. Under federal law, this privilege must be asserted by the head of the agency involved as first established under the related "state secrets" privilege. <u>United States v. Reynolds</u>, 345 U.S. 1, 7-8 (1953) ("There must be a formal claim of privilege lodged by the head of the department which has control over the matter, after personal actual consideration of the matter"). Courts continue to apply this requirement for assertion of the deliberative process privilege. <u>Equal Employment Opportunity Commn. V. Texas Hydraulics Inc.</u>, 246 F.R.D. 548, 552 (E.D. Tenn. 2007); <u>Equal Employment Opportunity Commn. EOC v. Peoplemark, Inc.</u>, 2010 WL 7482801**2-3 (W.D. Mich. Feb. 26, 2010); <u>Proctor and Gamble v. United States</u>, 2009 WL 5219726, at *8 (S.D. Ohio Dec. 31, 2009); <u>Alpha I, L.P. v. United States</u>, 83 Fed. Cl. 279, 289 (2008); <u>Equal Employment Opportunity Commn EOC v. Texas Hydraulics, Inc.</u>, 246 R.R.D. 548, 552 (E.D. Tenn. 2007). The State did not do so here for its counsel's assertion of this privilege. As to Clark's deposition, the privilege is deemed waived and under <u>Swift</u>, this privilege would not exist for Clark.

For these reasons, the Plaintiffs should be permitted to question Clark on the bases for the TDEC-WMT memorandum of understanding and his knowledge of those discussions.

An appropriate Order is filed herewith

It is so **ORDERED**.

**ENTERED** this the 9th day of August, 2011.

_____
WILLIAM J. HAYNES, JR.
United States District Judge